IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO. _____

DELENA BROWN,

    Plaintiff,

vs.

WINDFEATHER CHARTERS NV d/b/a MI DUSHI SAILING
AND SNORKELING TOURS DUTCH CARIBBEAN,

    Defendant.
_____/

DELENA BROWN,

    Garnishor,

vs.

CARNIVAL CORPORATION, ROYAL CARIBBEAN CRUISES LTD.,
CELEBRITY CRUISES INC., and NCL (BAHAMAS) LTD.,

    Garnishees.
_____/

**VERIFIED COMPLAINT PRAYING FOR
ATTACHMENT PURSUANT TO SUPPLEMENTAL RULE B**

1. The Plaintiff, DELENA BROWN, is a citizen of the United States and a resident of the State of Georgia.

2. Defendant, WINDFEATHER CHARTERS NV d/b/a MI DUSHI SAILING AND SNORKELING TOURS DUTCH CARIBBEAN, is a corporation registered in and existing under the laws of Aruba, with its principal place of business in Aruba.

3. This matter is brought under the admiralty and maritime jurisdiction of this Court.

4. At all times material hereto, Defendant, WINDFEATHER CHARTERS NV and/or MI DUSHI SAILING AND SNORKELING TOURS DUTCH CARIBBEAN (collectively referred to as "the Excursion Entities"), personally or through an agent:

a. Did not have an office in this state and/or county and cannot be found within the jurisdiction of this Court[1]; and

b. Were engaged in activity with Garnishees, CARNIVAL CORPORATION, ROYAL CARIBBEAN CRUISES LTD., CELEBRITY CRUISES INC., and/or NCL (BAHAMAS) LTD., by virtue of Tour Operator and/or Shore Excursion Agreement(s).

c. Garnishees, CARNIVAL CORPORATION, ROYAL CARIBBEAN CRUISES LTD., CELEBRITY CRUISES INC., and NCL (BAHAMAS) LTD., are entities with their principal place of business in Florida.

5. The Garnishees are subject to the jurisdiction of the Courts of this state.

6. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

7. At all times material hereto, the Excursion Entities entered into contracts with Garnishees, CARNIVAL CORPORATION, ROYAL CARIBBEAN CRUISES LTD., CELEBRITY CRUISES INC., and/or NCL (BAHAMAS) LTD., wherein the cruise lines agreed to market and sell the Excursion Entities' excursions to their passengers and the Excursion Entities operated shore excursions for cruise line passengers. Pursuant to the terms of the agreements, the cruise lines exclusively collected money for the shore excursions from the passengers and, upon the conclusion of each cruise, the cruise lines paid the Excursion Entities their share of the proceeds.

---

[1] *See Brown v. Carnival Corp., et al.*, 16-CV-21448-UU (S.D. Fla. August 15, 2016) [D.E. 25] (granting the Excursion Entities' Motion to Dismiss for Lack of Personal Jurisdiction).

- 3 -

The payments from the cruise lines to the Excursion Entities are processed and sent from each cruise line's principal place of business in Florida.

## FACTS COMMON TO ALL COUNTS

8. At all times material hereto, Garnishee, CARNIVAL CORPORATION ("Carnival") owned, operated, managed, maintained and/or controlled the vessel, *Carnival Conquest*.

9. At all times material hereto, the Excursion Entities, owned and/or operated the excursion entitled, "Aruba's Dushi Sail & Snorkel with Lunch," which was offered, arranged for, sponsored, recommended, marketed, sold, co-operated and/or managed by Carnival.

10. After booking the subject cruise aboard the *Carnival Conquest*, Carnival sent the Plaintiff promotional material, which provided information and descriptions of shore excursions, including the Sail & Snorkel excursion.

11. In addition to the promotional material sent to the Plaintiff, Carnival's website contained information and descriptions of shore excursions, including the Sail & Snorkel excursion. Tickets for shore excursions, including the Sail & Snorkel excursion, were also available for sale on Carnival's website.

12. Once the Plaintiff was aboard the subject cruise ship, Carnival conducted a live presentation to passengers, during which Carnival discussed all of the excursion options available to passengers during the cruise. This live presentation was recorded by Carnival, and it was televised in the passengers' cabins, including the Plaintiff's cabin, during the subject cruise. The Sail & Snorkel excursion was among the excursions discussed at the presentation.

13. Carnival also had promotional materials at its shore excursion desk aboard the cruise ship and/or other areas of the ship with information and descriptions of shore excursions, including the Sail & Snorkel excursion. Tickets for shore excursions, including the Sail & Snorkel excursion, were also available for sale on Carnival's shore excursion desk aboard the cruise ship.

14. The information and/or material Carnival made available and/or distributed to the Plaintiff represented that the excursions offered by Carnival, including the Sail & Snorkel excursion, were safe.  For example, Carnival's website stated that Carnival "hand selected the best local providers at every port of call," and Carnival advised its passengers, including the Plaintiff, that they not engage in excursions, tours or activities that were not selected and sold by Carnival.  In addition, Carnival's promotional material and information concerning the Sail & Snorkel excursion did not require or recommend any particular level of boating experience or advanced physical endurance to participate in the Sail & Snorkel excursion.  On the contrary, the information and/or material Carnival made available and/or distributed to the Plaintiff represented that it was a "relaxing" excursion with "moderate" activity for the swimming involved in the excursion.

15. The information contained in the promotional material and information Carnival made available and/or distributed to the Plaintiff concerning the Sail & Snorkel excursion was derived exclusively from information and/or material the Excursion Entities provided to Carnival.

16. Accordingly, the Excursion Entities undertook a duty to accurately advise Carnival and/or Carnival's passengers, including the Plaintiff, concerning the Sail & Snorkel excursion, in order to obtain a profit from the sale of tickets for the excursion, and the Excursion Entities were required to execute that duty utilizing reasonable care under the circumstances.

17. The Plaintiff had never participated in an excursion like the Sail & Snorkel excursion prior to the subject cruise.  Therefore, relying on the safety and reputability of the excursions offered by Carnival, including the Sail & Snorkel excursion, the Plaintiff purchased tickets for the Sail & Snorkel excursion directly from Carnival.  The Plaintiff obtained all of the information regarding the Sail & Snorkel excursion from Carnival and made all of the reservation arrangements for the Sail & Snorkel excursion exclusively with Carnival.  In turn, Carnival and the Excursion Entities received a portion of the Plaintiff's ticket price for the Sail & Snorkel excursion.

18. The Plaintiff reviewed Carnival's presentations of information (acquired from the Excursion Entities) concerning the Sail & Snorkel excursion in Aruba and relied upon such presentations exclusively and to her detriment in deciding to purchase the Sail & Snorkel excursion from Carnival and to participate in same during the Plaintiff's cruise aboard the *Carnival Conquest*.

19. Based upon Carnival's presentations of information (acquired from the Excursion Entities) concerning the Sail & Snorkel excursion in Aruba, the Plaintiff reasonably understood that regular inspections of the vessel(s), facilities, and operations of the Sail & Snorkel excursion in Aruba were conducted to ensure that they were reasonably safe, and she relied upon such understanding to her detriment in deciding to purchase the Sail & Snorkeling excursion from Carnival and to participate in same during Plaintiff's cruise aboard the *Carnival Conquest*.

20. On or about August 20, 2015, as part of Plaintiff's cruise aboard the *Carnival Conquest*, the Plaintiff participated in the Sail & Snorkel excursion in Aruba.

21. The Sail & Snorkel excursion was approximately five-and-a-half hours long aboard the *Mi Dushi* watercraft, and it stopped at three different places for snorkeling.  When boarding the watercraft after each of the three stops, the participants, including the Plaintiff, were required to carry their own snorkel equipment to their seats.

22. At or around the time of the Plaintiff's incident, all of the participants were boarding the vessel after the first snorkeling stop.  As the participants were boarding the watercraft, the participants and/or their snorkel equipment were dripping wet.  The Plaintiff boarded the watercraft and was on her way to her seat, which was located on the upper deck.  The steps to the upper deck, however, did not have a complete handrail from the upper deck to the lower deck. Instead, the handrail was only located on the top portion of the steps, and the bottom portion of the steps did not have a handrail.  In addition, the steps to the upper deck were unreasonably steep.

23.  The foregoing configuration of the vessel violated the safety standards for marine facilities and should have been discovered by the Excursion Entities had they conducted an inspection of the vessel(s), facilities, and operations of the Sail & Snorkel excursion in Aruba to ensure that they were reasonably safe prior to offering the excursion to Carnival for Carnival to recommend the excursion to its passengers, including the Plaintiff, to the exclusion of other excursions not offered by Carnival and/or the Excursion Entities.

24. Despite the watercraft's configuration and the fact that passengers had to carry their own snorkel equipment while boarding, there were no tour guides and/or employees (1) ensuring and/or requiring that passengers and/or their snorkel equipment be dry when boarding, (2) assisting participants like the Plaintiff in boarding and/or getting to the upper deck, and/or (3) instructing participants like the Plaintiff on how to board and/or get to the upper deck safely.

25. The foregoing operation of the excursion was unreasonably hazardous and should have been discovered by the Excursion Entities had they conducted an inspection of the vessel(s), facilities, and operations of the Sail & Snorkel excursion in Aruba to ensure that they were reasonably safe prior to offering the excursion to Carnival for Carnival to recommend the excursion to its passengers, including the Plaintiff, to the exclusion of other excursions not offered by Carnival and/or the Excursion Entities.

26. Therefore, as the Plaintiff was on the bottom portion of the steps, she attempted to use the only handrail available to her (i.e., the handrail located on the top portion of the steps) to pull herself up to the top step.  In doing so, the Plaintiff slipped due to the wet, slippery and/or hazardous surface of the steps and/or handrail, and she was thrown off balance toward the left due to the slip and/or due to the snorkel equipment that she was carrying.  As a result, the Plaintiff fell over the railing down to the lowest deck, which was approximately three decks below.  The fall

caused the Plaintiff to suffer severe injuries, including, but not limited to, a fractured fibula as well as a broken ankle and wrist.

27. The excursion and/or the watercraft used for the excursion was not suitable for passengers like the Plaintiff, especially when requiring participants to carry their own wet snorkel equipment through unreasonably steep steps that do not have a complete handrail, all without sufficient and/or adequate assistance or instruction.

28. The foregoing operation of the excursion was unreasonably hazardous and should have been discovered by the Excursion Entities had they conducted an inspection of the vessel(s), facilities, and operations of the Sail & Snorkel excursion in Aruba to ensure that they were reasonably safe prior to offering the excursion to Carnival for Carnival to recommend the excursion to its passengers, including the Plaintiff, to the exclusion of other excursions not offered by Carnival and/or the Excursion Entities.

29. Prior to the subject incident, the Excursion Entities were or should have been on notice that the excursion generally and/or the watercraft used for the excursion specifically was/were not reasonably safe for passengers. This notice was or should have been acquired through the Excursion Entities' initial approval process and/or its yearly inspections of the Sail & Snorkel excursion with Carnival (and potentially other cruise lines).

30. Specifically, before offering excursions to cruise lines, the excursions and/or the excursion operators are subject to the cruise line's approval pursuant to policies and procedures promulgated by the cruise line (including Carnival). This is a duty undertaken by the cruise lines, in part, so that they may make the aforementioned representations concerning the subject excursion to its passengers in an effort to generate a profit. Accordingly, the cruise lines and the Excursion Entities are required to execute this duty with reasonable care under the circumstances. During the excursion approval process, the cruise lines (including Carnival) are supposed to verify whether

the operator is qualified. The excursion operators also provide the cruise lines (including Carnival) details pertaining to the excursion, including, but not limited to, the location, a description, restrictions, participation levels for the excursion, and/or the type of vessel and/or other transportation used for the excursion. Part of the approval process also entails the cruise lines' representatives inspecting the excursion being proposed, including the physical facilities, equipment, and operations. The inspections are conducted alongside the excursion operators' representatives. Accordingly, representatives of the Excursion Entities did or should have boarded the *Mi Dushi* watercraft used for the Sail & Snorkel excursion with Carnival representatives, and as such, the representatives did or should have noticed the hazard that the steps and/or handrail posed to passengers like the Plaintiff. Further, taking the Sail & Snorkel excursion did or should have revealed the insufficient and/or inadequate assistance and/or instruction, particularly when boarding the vessel wet and navigating through hazardous steps while carrying wet snorkel equipment.

31. Moreover, once an excursion is approved and accepted by the cruise line (including Carnival), the cruise line sends excursion operators standards, policies, and/or procedures that the operators must adhere to while the cruise line is offering their excursions to its passengers. Additionally, the excursion operators are subject to yearly inspections and/or approval by the cruise line, wherein the cruise line conducts site inspections of the excursion, including the vessels and/or other transportation used for the excursion, as well as the equipment and/or operations of the excursion. The yearly inspections and/or approval process also requires excursion operators to submit yearly "bids" and/or reports to the cruise line, wherein the operators disclose the details of incidents that occurred during the excursion involving cruise line passengers (among other information). Therefore, prior to the Plaintiff's incident, the Excursion Entities and/or Carnival was or should have been on notice that cruise ship passengers were injured participating in snorkel

- 9 -

excursions, including the Sail & Snorkel excursion. Further, the cruise line's yearly inspections and/or approval, including taking the Sail & Snorkel excursion, did or should have revealed the Excursion Entities' insufficient and/or inadequate assistance and/or instruction to excursion participants.

### COUNT I – NEGLIGENCE AGAINST THE EXCURSION ENTITIES

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-one (31) as though alleged originally herein.

32. At all times material hereto, the Excursion Entities owned and/or operated the subject excursion.

33. At all times material hereto, it was the duty of the Excursion Entities to provide the Plaintiff with reasonable care under the circumstances.

34. On or about August 20, 2015, the Excursion Entities and/or their agents, servants, joint ventures and/or employees breached their duty to provide Plaintiff with reasonable care under the circumstances.

35. On or about August 20, 2015, the Plaintiff was injured due to the fault and/or negligence of the Excursion Entities and/or their agents, servants, joint ventures and/or employees for acts and/or omissions that include, but are not limited to, the following:

   a. Failure to provide a safe excursion; and/or

   b. Failure to select and/or utilize a watercraft that was reasonably safe for cruise passengers and the Plaintiff; and/or

   c. Failure to maintain the subject area in a clean and dry condition as passengers boarded the watercraft after each snorkeling stop; and/or

   d. Failure to adequately and regularly inspect the subject area for wet and slippery conditions as passengers boarded the watercraft after each snorkeling stop; and/or

e. Failure to have a non-slip or non-skid surface and/or material on the steps and/or handrail in light of the anticipated purpose; and/or

f. Failure to place rubber mats or other non-slip covering or substance on the steps and/or handrail in light of the anticipated purpose; and/or

g. Failure to adequately identify slipping and/or falling hazards aboard the watercraft; and/or

h. Failure to adequately determine and/or test the coefficient of friction and/or slip resistance of the steps and/or handrails; and/or

i. Failure to close off and/or place warning signs on or around the wet and slippery areas aboard the watercraft; and/or

j. Failure to provide a reasonably safe means of access for passengers' re-embarkation onto the watercraft after each snorkeling stop; and/or

k. Failure to provide adequate handrails and/or other devices to assist passengers boarding the watercraft after each snorkeling stop, including, but not limited to, between the upper deck and the lower deck; and/or

l. Failure to ensure and/or require that passengers and/or their snorkel equipment be dry when boarding the watercraft after each snorkeling stop; and/or

m. Failure to provide adequate assistance for passengers boarding the watercraft and/or getting to their seats after each snorkeling stop; and/or

n. Failure to provide an adequate number of tour guides to assist passengers boarding the watercraft and/or getting to their seats after each snorkeling stop; and/or

o. Failure to adequately instruct passengers on how to board the watercraft and/or get to the upper deck in a reasonably safe manner while carrying their snorkel equipment after each snorkeling stop; and/or

p.  Requiring passengers to carry their snorkel equipment while boarding the watercraft and/or getting to their seats after each snorkeling stop; and/or

q.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to require that the watercraft be maintained in a clean and dry condition as passengers board the watercraft after each snorkeling stop; and/or

r.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to require that the watercraft be adequately and regularly monitored to maintain it free of wet and slippery conditions; and/or

s.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to require that the watercraft be adequately and regularly cleaned to maintain it free of wet and slippery conditions; and/or

t.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to require that passengers and/or their snorkel equipment be dry when boarding the watercraft after each snorkeling stop; and/or

u.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to require that rubber mats and/or non-slip coverings be utilized aboard the watercraft, including where the subject incident occurred, at all times and/or when passengers are boarding the watercraft after each snorkeling stop; and/or

v.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to require that a non-slip and/or non-skid substance be applied to the steps and/or handrails aboard watercraft; and/or

w.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to require that passengers participating in the subject shore excursion are adequately and/or

properly assisted and/or instructed by tour guides, including, but not limited to, when boarding and/or getting to their seats after each snorkeling stop; and/or

x. Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to require that an adequate number of tour guides assist passengers, including, but not limited to, when boarding and/or getting to their seats after each snorkeling stop; and/or

y. Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to adequately warn passengers of the risks and/or dangers associated with wet and slippery areas aboard the watercraft; and/or

z. Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to close off and/or place warning signs on or around wet and slippery areas aboard the watercraft; and/or

aa. Failure to adequately warn passengers (including the Plaintiff) of the wet and slippery condition of the subject area; and/or

bb. Failure to adequately warn passengers (including the Plaintiff) of the risks and/or dangers associated with the wet and slippery condition of the subject area; and/or

cc. Failure to adequately warn passengers (including the Plaintiff) that the subject shore excursion would not include assistance and/or instructions from the tour guides when boarding and/or getting to their seats after each snorkeling stop; and/or

dd. Failure to adequately warn passengers (including the Plaintiff) of the dangers and/or difficulties involved in boarding the watercraft and/or getting to their seats after each snorkeling stop; and/or

ee. Failure to adequately warn passengers (including the Plaintiff) of the watercraft's slipping and/or falling hazards.

40. All or some of the above acts and/or omissions by the Excursion Entities caused and/or contributed to the Plaintiff being severely injured while participating in the subject shore excursion.

41. At all times material hereto, the Excursion Entities knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Entities, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through: (a) the initial approval process of the Sail & Snorkel excursion, including, but not limited to, having representative(s) inspect the Sail & Snorkel excursion; (b) the yearly inspections of the Sail & Snorkel excursion, including, but not limited to, conducting site inspections aboard the subject watercraft; and/or (c) prior incidents involving passengers injured on snorkel excursions.  Moreover, the Excursion Entities knew or should have known that requiring participants to carry their own wet snorkel equipment through unreasonably steep steps that do not have a complete handrail, all without sufficient and/or adequate assistance or instruction, could cause serious injury.

42. As a direct and proximate result of the negligence of the Excursion Entities, the Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law.

### COUNT II – *QUASI IN REM* ATTACHMENT AND
### GARNISHMENT AGAINST THE EXCURSION ENTITIES

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-one (31) as though alleged originally herein.

43. This claim falls within the Court's admiralty and maritime subject matter jurisdiction, as it is a claim that arises from injuries to a passenger during a cruise on navigable waters. *See Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV-GOODMAN, 2014 WL 2480612 (S.D. Fla. June 3, 2014) (finding that admiralty jurisdiction existed for cruise passengers' Rule B claim against a land-based shore excursion operator providing transportation for cruise passengers to and from an excursion).

44. The Plaintiff filed this verified Complaint and requests this Honorable Court attach and/or garnish the belongings of the Excursion Entities that are in the possession of Garnishees, CARNIVAL CORPORATION, ROYAL CARIBBEAN CRUISES LTD., CELEBRITY CRUISES INC., and NCL (BAHAMAS) LTD.

45. Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure expressly states that "[i]f a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property--up to the amount sued for--in the hands of garnishees named in the process."

46. Herein, the Excursion Entities cannot be found within the Southern District of Florida. *See Brown v. Carnival Corp., et al.*, 16-CV-21448-UU (S.D. Fla. August 15, 2016) [D.E. 25] (granting the Excursion Entities' Motion to Dismiss for Lack of Personal Jurisdiction).

47. The Excursion Entities' belongings located within this judicial district are the past, present and future earnings from their Tour Operator and/or Shore Excursion Agreement(s), and/or any

other agreements with Garnishees, CARNIVAL CORPORATION, ROYAL CARIBBEAN CRUISES LTD., CELEBRITY CRUISES INC., and NCL (BAHAMAS) LTD.  This includes, but is not limited to, all moneys owing under the aforementioned agreements from the Garnishees (directly or indirectly from any of the Garnishees' entities, affiliates and/or agents) to the Excursion Entities, and/or any person and/or entity acting as agent and/or collecting moneys for the Excursion Entities.

48. The amount of damages sought in this action, including unliquidated damages and attorneys' fees in this action, is an amount in excess of $1,500,000.00 United States Dollars.

**WHEREFORE**, the Plaintiff demands for process to attach the Excursion Entities' tangible or intangible personal property, up to the amount sued for, in the hands of the Garnishees named in the process.

    Respectfully submitted,

    LIPCON, MARGULIES,
    ALSINA & WINKLEMAN, P.A.
    *Attorneys for Plaintiff*
    One Biscayne Tower, Suite 1776
    2 South Biscayne Boulevard
    Miami, Florida 33131
    Telephone No.: (305) 373-3016
    Facsimile No.: (305) 373-6204

By: */s/ Jacqueline Garcell*
    **JASON R. MARGULIES**
    Florida Bar No. 57916
    jmargulies@lipcon.com
    **JACQUELINE GARCELL**
    Florida Bar No. 104358
    jgarcell@lipcon.com

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO. _____

DELENA BROWN,

    Plaintiff,

vs.

WINDFEATHER CHARTERS NV d/b/a MI DUSHI SAILING
AND SNORKELING TOURS DUTCH CARIBBEAN,

    Defendant.
_____/

DELENA BROWN,

    Garnishor,

vs.

CARNIVAL CORPORATION, ROYAL CARIBBEAN CRUISES LTD.,
CELEBRITY CRUISES INC., and NCL (BAHAMAS) LTD.,

    Garnishees.
_____/

## **VERIFICATION**

1. This affidavit is executed by the undersigned in order to attach and/or garnish the belongings of Defendant, WINDFEATHER CHARTERS NV d/b/a MI DUSHI SAILING AND SNORKELING TOURS DUTCH CARIBBEAN, in the above-styled cause in admiralty.

2. The undersigned does hereby certify to the Court, the Clerk and the Marshal that the undersigned has made a diligent search and inquiry to ascertain the name and address of a person or party upon whom can be served process in the Southern District of Florida in personam which will bind Defendant, WINDFEATHER CHARTERS NV d/b/a MI DUSHI SAILING AND SNORKELING TOURS DUTCH CARIBBEAN.

3. Based upon such diligent search and inquiry the undersigned has been unable to ascertain the name and address of any person or party within the Southern District of Florida upon whom service of process would bind Defendant, WINDFEATHER CHARTERS NV d/b/a MI DUSHI SAILING AND SNORKELING TOURS DUTCH CARIBBEAN.

4. In addition, the Plaintiff requests process to attach the tangible or intangible personal property of Defendant, WINDFEATHER CHARTERS NV d/b/a MI DUSHI SAILING AND SNORKELING TOURS DUTCH CARIBBEAN, up to $1,500,000.00, in the hands of the Garnishees. To affiant's knowledge, or on information and belief, the Defendant, WINDFEATHER CHARTERS NV d/b/a MI DUSHI SAILING AND SNORKELING TOURS DUTCH CARIBBEAN, cannot be found within the district.

5. I verify under penalty of perjury that the foregoing is true and correct.

6. The Clerk of this Court is hereby requested to issue the Maritime Summons to Show Cause Respecting Intangible Property and Summons and Process of Maritime Attachment and Garnishment and deliver it to the Marshall's office.

7. The Marshall is hereby directed to promptly serve said Maritime Summons to Show Cause Respecting an Intangible Property and Summons and Process of Maritime Attachment and Garnishment upon Garnishees, CARNIVAL CORPORATION, ROYAL CARIBBEAN CRUISES LTD., CELEBRITY CRUISES INC., and NCL (BAHAMAS) LTD.

**<u>Declaration Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746</u>**

I declare under penalty of perjury that the foregoing verification is true and correct. Executed on this 26th day of August, 2016.

_____
JACQUELINE GARCELL